Brenton R. Babcock (SBN 162,120)
brent.babcock@knobbe.com
Ali S. Razai (SBN 246,922)
ali.razai@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiffs
EDGE SYSTEMS LLC and
AXIA MEDSCIENCES, LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| EDGE SYSTEMS LLC, a California limited liability company, and AXIA MEDSCIENCES, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>AESTHETIC SKIN SYSTEMS LLC, a California limited liability company,<br><br>Defendant. | Civil Action No. 2:17-cv-04597<br><br>**COMPLAINT FOR PATENT INFRINGEMENT, TRADE DRESS INFRINGEMENT, AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Edge Systems LLC, ("Edge") and Axia Medsciences, LLC ("Axia") (collectively, "Plaintiffs") hereby complain of Aesthetic Skin Systems LLC ("Defendant") and allege as follows:

## I. JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over the patent and trade dress infringement claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court has original subject matter jurisdiction over the unfair competition claims in this action pursuant to 28 U.S.C. § 1338(b).

2.     This Court has personal jurisdiction over Defendant because Defendant has a continuous, systematic, and substantial presence within this judicial district including by selling and offering for sale infringing products in this judicial district, and by committing acts of infringement in this judicial district, including but not limited to selling infringing products directly to consumers and/or retailers in this district and selling infringing products into the stream of commerce knowing such products would be sold in California and this district, which acts form a substantial part of the events or omissions giving rise to Plaintiffs' claim.

3.     Plaintiffs are informed and believe and, based thereon, allege that Defendant has a regular and established place of business in this district at 2621 Manhattan Beach Blvd., Redondo Beach, California 90278.

4.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1400(b).  Defendant is a company organized and existing under the laws of the state of California.

## II. THE PARTIES

5.     Plaintiff Edge is a California corporation having its principal place of business at 2277 Redondo Ave., Signal Hill, CA 90755.

6.     Plaintiff Axia is a Delaware limited liability company having its principal place of business at 23 Hallmark Circle, Menlo Park, California,

- 1 -

1    94025.

2        7.    Plaintiffs are informed and believe and, based thereon, allege that

3    Aesthetic Skin Systems LLC is a California limited liability company having its

4    principal place of business at 2621 Manhattan Beach Blvd., Redondo Beach,

5    California 90278.

6                    **III.  GENERAL ALLEGATIONS**

7        8.    Edge  is  a  worldwide  leader  in  microdermabrasion  and

8    hydradermabrasion  systems.   Edge  has  spent  considerable  time,  effort  and

9    money to develop its proprietary technology, including the HydraFacial MD®

10   hydradermabrasion system.

11       9.    To protect its substantial investment, Edge has obtained the rights

12   to various patents and patent applications throughout the world.

13       10.   On November 4, 2003, the United States Patent and Trademark

14   Office ("USPTO") duly and lawfully issued U.S. Patent No. 6,641,591 ("the

15   '591  Patent"),  titled  "INSTRUMENTS  AND  TECHNIQUES  FOR

16   CONTROLLED REMOVAL OF EPIDERMAL LAYERS."  A true and correct

17   copy of the '591 Patent is attached hereto as Exhibit 1.

18       11.   On March 16, 2010, the USPTO duly and lawfully issued U.S.

19   Patent No. 7,678,120 ("the '120 Patent"), titled "INSTRUMENTS AND

20   TECHNIQUES  FOR  CONTROLLED  REMOVAL  OF  EPIDERMAL

21   LAYERS." A true and correct copy of the '120 Patent is attached hereto as

22   Exhibit 2.

23       12.   On September 7, 2010, the USPTO duly and lawfully issued U.S.

24   Patent No. 7,789,886 ("the '886 Patent"), titled "INSTRUMENTS AND

25   TECHNIQUES  FOR  CONTROLLED  REMOVAL  OF  EPIDERMAL

26   LAYERS." A true and correct copy of the '886 Patent is attached hereto as

27   Exhibit 3.

28

13.     On November 29, 2011, the USPTO duly and lawfully issued U.S. Patent No. 8,066,716 ("the '716 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS." A true and correct copy of the '716 Patent is attached hereto as Exhibit 4.

14.     On December 25, 2012, the USPTO duly and lawfully issued U.S. Patent No. 8,337,513 ("the '513 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS." A true and correct copy of the '513 Patent is attached hereto as Exhibit 5.

15.     On October 18, 2016, the USPTO duly and lawfully issued U.S. Patent No. 9,468,464 ("the '464 Patent"), titled "METHODS FOR TREATING THE SKIN USING VACUUM." A true and correct copy of the '464 Patent is attached hereto as Exhibit 6.

16.     Axia is the owner of all right, title, and interest in the '591 Patent, the '120 Patent, the '886 Patent, the '716 Patent, the '513 Patent, and the '464 Patent (collectively, "the Asserted Patents"), which are each exclusively licensed to Edge.

17.     Edge's premier product is its revolutionary HydraFacial MD® hydradermabrasion system, which bears unique and distinctive trade dress that consists of the overall design and configuration of the product, as shown in the photograph below (the "Edge Trade Dress").



***THE EDGE MACHINE***

18.    Edge advertises its products bearing the Edge Trade Dress at trade shows, seminars, and through trade publications, social media, search engine optimization, emails, and webinars.   Edge has spent millions of dollars advertising its products bearing the Edge Trade Dress.

19.    In addition to Edge's own advertising, important national media outlets have featured Edge's products bearing the Edge Trade Dress and reinforced the public's association between Edge and the Edge Trade Dress.  A sample of such media includes: *People Magazine, Allure*, *The Hollywood Reporter, Tampa Bay Times*, *New Beauty*, *OK! Magazine*, *Star Magazine*, *Elle Beauty Book*, *Harper's Bazaar Magazine*, *Essence*, *Simply Her*, *Examiner.com*, and *In Style*.

20.    Edge's products bearing the Edge Trade Dress have also been shown on *Good Day L.A., The Doctors, KLBK News, Great Day Houston,* and *Real Housewives of Beverly Hills*.

21.     Edge's products bearing the Edge Trade Dress have received widespread public attention and acclaim, including being awarded the "Best Equipment for the Face" by LNE & Spa numerous times.

22.     Promotional materials and advertisements of Edge's products that bear the Edge Trade Dress have been distributed and are recognized by consumers throughout the United States.  As a result of Edge's substantial efforts, the Edge Trade Dress has become extremely valuable to Edge as an identifier of the company, and the substantial goodwill Edge has earned in the market.  The Edge Trade Dress has become synonymous in consumers' minds with Edge.

23.     Edge sells its products bearing the Edge Trade Dress to many consumers, including dermatologists, plastic surgeons, and health spas. Edge's products bearing the Edge Trade Dress are offered at thousands of locations throughout the United States, including in all 50 states.

24.     As a result of the widespread use, advertising, promotion, media exposure and display of the Edge Trade Dress, (a) the public has come to recognize and identify products bearing the Edge Trade Dress as emanating from Edge, (b) the public recognizes that products bearing the Edge Trade Dress constitute high quality products that conform to the specifications created by Edge, and (c) the Edge Trade Dress has established strong secondary meaning and extensive goodwill.

25.     The Edge Trade Dress is not functional.  The design features embodied by the Edge Trade Dress are not essential to the function of the product, do not make the product cheaper or easier to manufacture, and do not affect the quality of the product.  The design of the Edge Trade Dress is not a competitive necessity.

26.     Subsequent to Edge's use and adoption of the Edge Trade Dress, Defendant has developed, manufactured, imported, advertised, and/or sold

products that use trade dress that is confusingly similar to the Edge Trade Dress.

27.     Defendant makes, uses, sells, offers to sell, and/or imports into the United States the Aqua Skin Facial product ("Accused Product").  A photograph of the Accused Product is shown below.



28.     The Accused Product infringes each of the Asserted Patents and the Edge Trade Dress.

29.     The Accused Product is a system for treating the skin surface of a patient.  The Accused Product includes a handpiece and a variety of tips, examples of which are shown in the photograph below.



30.     The handpiece of the Accused Product has (1) a port that can be attached to a vacuum source that is housed in the Accused Product, and (2) a port that can attach to at least one fluid source that is housed in the Accused Product.  The handpiece, in combination with one of the tips that can be used with the Accused Product, defines a skin interface portion.

31.     At least some of the tips that can be used with the handpiece of the Accused Product have abrading structures with substantially sharp edges to abrade the skin.  When the Accused Product is in use, the vacuum creates a seal between the skin interface portion of the handpiece and the patient's skin.  The Accused Product deposits fluid, for example a skin treatment media that may be housed in the Accused Product, on the patient's skin through the port in the handpiece.  The vacuum source at least aids in depositing the fluid onto the patient's skin.  If the handpiece is used with a tip that has an abrading structure, the handpiece abrades the patient's skin, which can result in skin cells and/or debris.  The suction from the vacuum source can carry away skin cells, debris, and/or fluid from the patient's skin through the skin interface portion of the handpiece and into a waste container.

32.     Plaintiffs are informed and believe and, based thereon, allege that Defendant sells its infringing products, including the Accused Product, to its customers, including, for example, Asim Medical Center.

33.     Defendant's customers also infringed each of the Asserted Patents by using infringing product that they acquired from the Defendant.

34.     Defendant had actual knowledge of each of the Asserted Patents as early as February 1, 2017, when Plaintiffs sent Defendant a letter demanding that Defendant stop infringing the Asserted Patents.

35.     Plaintiffs are informed and believe and, based thereon, allege that Defendant knew that its customers would infringe each of the Asserted Patents by, for example, using its infringing products, including, for example, the

Accused Product, during the respective terms of the Asserted Patents.

36.     Plaintiffs are informed and believe and, based thereon, allege that Defendant had the specific intent to induce its customers to infringe each of the Asserted Patents by, for example, using products that infringe the Asserted Patents, including, for example, the Accused Product, during the respective term of the Asserted Patents.

### IV.  COUNT I
### PATENT INFRINGEMENT (35 U.S.C. § 271)

37.     Plaintiffs repeat and re-allege the allegations of paragraphs 1-36 of this Complaint as if set forth fully herein.

38.     This is a claim for patent infringement under 35 U.S.C. § 271.

39.     Plaintiffs are informed and believe and, based thereon, allege that Defendant has knowingly and intentionally infringed and continues to infringe the '591 Patent, either literally or under the doctrine of equivalents, though, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Product.

40.     For example, the Accused Product infringes at least Claim 1 of the '591 Patent because it is a system for treating the skin surface of a patient.  The Accused Product includes a handpiece that, when used with one of the tips, forms a working end that defines a skin interface portion for contacting skin.  The handpiece has one port that is communication with a treatment media source, and a second port that is in communication with a vacuum source.  The vacuum source is able to remove tissue (e.g., exfoliated skin) and treatment media that may have been deposited on the patient's skin, through the skin interface portion of the handpiece.  The Accused Product can be used with tips that include substantially sharp edge for abrading skin.

41.     Plaintiffs are informed and believe and, based thereon, allege that Defendant's customers (e.g., Asim Medical Center) that purchased infringing

product (e.g., the Accused Product) from the Defendant have also infringed the '591 Patent by, for example, using those infringing products.

42.     Plaintiffs are informed and believe and, based thereon, allege that Defendant knew that its customers (e.g., Asim Medical Center) would infringe the '591 Patent by, for example, using those infringing products during the term of the '591 Patent.

43.     Plaintiffs are informed and believe and, based thereon, allege that Defendant had the specific intent to induce its customers to infringe the '591 Patent by, for example, using products that infringe the '591 Patent.

44.     Defendant has knowingly and intentionally infringed and continues to infringe the '120 Patent, either literally or under the doctrine of equivalents, though, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Product.

45.     For example, use of the Accused Product infringes at least Claim 1 of the '120 Patent.  The Accused Product includes a handpiece that, when used with one of the tips, forms a working end that defines a skin interface portion for contacting skin.  The Accused Product includes, for example, tips that include apexes that extend upwardly from an abrading surface, where the apexes have sharp edges. The handpiece includes a port that is in communication with a vacuum source.

46.     When in use, the working end of the handpiece is placed against a patient's skin, and the skin is drawn against the tip of the handpiece by the negative pressure of the vacuum source.  The handpiece is moved across the patient's skin, while the tip remains stationary on the handpiece.  As a result, the edge on each of the apexes on the tip remains stationary relative to the handpiece.  The continuous suction of the vacuum source keeps the skin drawn against the sharp edge of the apexes of the tip, which abrades the skin as the handpiece is moved across the surface of the skin.  Any skin debris that results

from the skin abrasion is drawn through the aperture in the working end of the handpiece by the vacuum source and removed from the surface of the patient's skin.

47.    Plaintiffs are informed and believe and, based thereon, allege that Defendant's customers (e.g., Asim Medical Center) that purchased infringing product (e.g., the Accused Product) from the Defendant have also infringed the '120 Patent by, for example, using those infringing products.

48.    Plaintiffs are informed and believe and, based thereon, allege that Defendant knew that its customers (e.g., Asim Medical Center) would infringe the '120 Patent by, for example, using those infringing products during the term of the '120 Patent.

49.    Plaintiffs are informed and believe and, based thereon, allege that Defendant had the specific intent to induce its customers to infringe the '120 Patent by, for example, using products that infringe the '120 Patent.

50.    Defendant has knowingly and intentionally infringed and continues to infringe the '886 Patent, either literally or under the doctrine of equivalents, though, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Product.

51.    For example, the Accused Product infringes at least Claim 1 of the '886 Patent.  The Accused Product includes a handpiece that, when used with one of the tips of the Accused Product, forms a working end that defines a skin interface portion for contacting skin.  The handpiece, which has a longitudinal axis, includes a port that is in communication with a vacuum source.  The Accused Product includes, for example, tips that have a plurality of sharp elements for abrading skin that is positioned in a raised periphery that completely surrounds the abrading structure.  The tip includes an aperture that is also within the raised periphery; the aperture leads to the port that is in communication with the vacuum source of the Accused Product.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    52.    When in use, the working end of the handpiece is placed against a

17 patient's skin, and the skin is drawn against the outer periphery of the tip of the

18 handpiece by the negative pressure of the vacuum source.   The continuous

19 suction of the vacuum source keeps the skin drawn against the outer periphery

20 of the tip and against the sharp elements of the abrading structures, which

21 abrades the skin as the handpiece is moved across the surface of the skin.   Any

22 skin debris that results from the skin abrasion is drawn through the aperture in

23 the working end of the handpiece by the vacuum source and removed from the

24 surface of the patient's skin.

25    53.    Plaintiffs are informed and believe and, based thereon, allege that

26 Defendant's customers (e.g., Asim Medical Center) that purchased infringing

27 product (e.g., the Accused Product) from the Defendant have also infringed the

28 '886 Patent by, for example, using those infringing products.

54.     Plaintiffs are informed and believe and, based thereon, allege that Defendant knew that its customers (e.g., Asim Medical Center) would infringe the '886 Patent by, for example, using those infringing products during the term of the '886 Patent.

55.     Plaintiffs are informed and believe and, based thereon, allege that Defendant had the specific intent to induce its customers to infringe the '886 Patent by, for example, using products that infringe the '886 Patent.

56.     Defendant has knowingly and intentionally infringed and continues to infringe the '716 Patent, either literally or under the doctrine of equivalents, though, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Product.

57.     For example, the Accused Product infringes at least Claim 1 of the '716 Patent.  The Accused Product is a system for treating a skin surface of the patient.  The handpiece of the Accused Product has a main body and a working end that includes one of the tips of the Accused Product.  The Accused Product includes, for example, tips that have abrading structures, which are made up of a plurality of ridge elements that are configured to abrade skin.  The handpiece includes an aperture or opening at or near the working end that is coupled to the vacuum source in the Accused Product, which is configured to apply suction to the skin surface.  In at least some of the tips that can be used with the Accused Product, the plurality of ridge elements and the aperture leading to the vacuum source are entirely surrounded by an outer periphery.

58.     Plaintiffs are informed and believe and, based thereon, allege that Defendant's customers (e.g., Asim Medical Center) that purchased infringing product (e.g., the Accused Product) from the Defendant have also infringed the '716 Patent by, for example, using those infringing products.

59.     Plaintiffs are informed and believe and, based thereon, allege that Defendant knew that its customers (e.g., Asim Medical Center) would infringe

the '716 Patent by, for example, using those infringing products during the term of the '716 Patent.

60.     Plaintiffs are informed and believe and, based thereon, allege that Defendant had the specific intent to induce its customers to infringe the '716 Patent by, for example, using products that infringe the '716 Patent.

61.     Defendant has knowingly and intentionally infringed and continues to infringe the '464 Patent, either literally or under the doctrine of equivalents, though, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Product.

62.     For example, use of the Accused Product infringes at least Claim 1 of the '464 Patent.  When in use, the Accused Product embodies a method of treating a patient's skin surface.

63.     The handpiece of the Accused Product has a main body, which has a housing and a working end that includes one of the tips of the Accused Product.  The working end of the handpiece is configured to contact the patient's skin, and can be used with a tip that comprises a perimeter along the distal end of the handpiece.  The handpiece has a first aperture or opening arrangement that includes a port near the working end that is in fluid communication with a vacuum source in the Accused Product through a passageway in the distal end of the handpiece, and a second aperture or opening arrangement that includes a second port near the working end that is in fluid communication with a treatment media source in the Accused Product.  When in use, the vacuum source facilitates the delivery of a liquid treatment media to the surface of the patient's skin through the second port.  The used liquid treatment media is aspirated away from the surface of the patient's skin through the first port and the passageway at the distal end of the handpiece.  The negative pressure of the vacuum facilitates the delivery of the treatment media to subsurface skin tissue and the delivery of the treatment media hydrates or puffs

up the skin at the treatment site and facilitates the treatment method.

64.     Plaintiffs are informed and believe and, based thereon, allege that Defendant's customers (e.g., Asim Medical Center) that purchased infringing product (e.g., the Accused Product) from the Defendant have also infringed the '464 Patent by, for example, using those infringing products.

65.     Plaintiffs are informed and believe and, based thereon, allege that Defendant knew that its customers (e.g., Asim Medical Center) would infringe the '464 Patent by, for example, using those infringing products during the term of the '464 Patent.

66.     Plaintiffs are informed and believe and, based thereon, allege that Defendant had the specific intent to induce its customers to infringe the '464 Patent by, for example, using products that infringe the '464 Patent.

67.     Defendant's acts of infringement of each of the Asserted Patents were undertaken without permission or license from Plaintiffs.

68.     Defendant's actions constitute willful and intentional infringement of each of the Asserted Patents.  Defendant infringed each of the Asserted Patents with reckless disregard of Plaintiffs' patent rights.  Defendant knew, or it was so obvious that Defendant should have known, that its actions constituted infringement of each of the Asserted Patents.  Defendant's acts of infringement of each of the Asserted Patents were not consistent with the standards of commerce for its industry.

69.     As a direct and proximate result of Defendant's acts of infringement, Defendant has derived and received gains, profits, and advantages in an amount that are not presently known to Plaintiffs.

70.     Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to damages for Defendant's infringing acts and treble damages together with interests and costs as fixed by this Court.

71.     Pursuant to 35 U.S.C. § 285, Plaintiffs are entitled to reasonable

attorneys' fees for the necessity of bringing this claim.

72.     Due to the aforesaid infringing acts, Plaintiffs have suffered great and irreparable injury, for which Plaintiffs have no adequate remedy at law.

73.     Defendant will continue to infringe Plaintiffs' patent rights to the great and irreparable injury of Plaintiffs, unless enjoined by this Court.

## V.  COUNT II

## FEDERAL TRADE DRESS INFRINGEMENT &
## UNFAIR COMPETITION (15 U.S.C. § 1125(a))

74.     Edge repeats and re-alleges the allegations of paragraphs 1-73 of this Complaint as if set forth fully herein.

75.     This is a claim for trade dress infringement and unfair competition arising under 15 U.S.C. § 1125.

76.     Subsequent to Edge's use and adoption of the Edge Trade Dress, Defendant has developed, manufactured, imported, advertised, and/or sold products that use trade dress that is confusingly similar to the Edge Trade Dress. For example, Defendant's Accused Product, which were sold and/or offered for sale on Defendant's website http://aestheticskinsystems.com/, are confusingly similar to the Edge Trade Dress.

77.     Defendant's use of a trade dress that is confusingly similar to the Edge Trade Dress in connection with its products is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Edge.

78.     Defendant's use of a trade dress that is confusingly similar to the Edge Trade Dress without Edge's consent constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods

1   or commercial activities by another person in violation of 15 U.S.C. § 1125(a).

2       79.   Such conduct by Defendant is likely to confuse, mislead, and

3   deceive Defendant's customers, purchasers, and members of the public as to the

4   origin of the Defendant's products or cause said persons to believe that

5   Defendant and/or its products have been sponsored, approved, authorized, or

6   licensed by Edge or are in some way affiliated or connected with Edge, all in

7   violation of 15 U.S.C. § 1125(a) and constitutes unfair competition with Edge.

8       80.   Plaintiffs are informed and believe and, based thereon, allege that

9   Defendant's acts of trade dress infringement and unfair competition were

10  undertaken willfully with the express intent to cause confusion, and to mislead

11  and deceive the purchasing public.

12      81.   Plaintiffs are informed and believe and, based thereon, allege that

13  Defendant has derived and received, and will continue to derive and receive,

14  gains, profits, and advantages from Defendant's trade dress infringement and

15  unfair competition in an amount that is not presently known to Edge.  By reason

16  of Defendant's actions constituting trade dress infringement, Edge has been

17  damaged and is entitled to monetary relief in an amount to be determined at

18  trial.

19      82.   Due to Defendant's actions constituting trade dress infringement

20  and unfair competition, Edge has suffered and continues to suffer great and

21  irreparable injury, for which Edge has no adequate remedy at law.

22      83.   Pursuant to 15 U.S.C. § 1117, Edge is entitled to damages for

23  Defendant's infringing acts, up to three times actual damages as fixed by this

24  Court, and its reasonable attorneys' fees for the necessity of bringing this claim.

25  **VI.  COUNT IV**

26  **CALIFORNIA UNFAIR COMPETITION**

27      84.   Edge repeats and re-alleges the allegations of paragraphs 1-83 of

28  this Complaint as if set forth fully herein.

85.     This is a claim for unfair competition, arising under California Business & Professions Code § 17200, *et seq.* and California common law.

86.     Defendant's acts of trade dress infringement complained of herein constitute unfair competition with Edge under the common law and statutory laws of the State of California, particularly California Business & Professions Code § 17200 *et seq.*

87.     Edge is informed and believes, and thereon alleges, that Defendant has derived and received, and will continue to derive and receive, gains, profits, and advantages from Defendant's unfair competition in an amount that is not presently known to Edge.  By reason of Defendant's wrongful acts as alleged in this Complaint, Edge has been damaged and is entitled to monetary relief in an amount to be determined at trial.

88.     By its actions, Defendant has injured and violated the rights of Edge and has irreparably injured Edge, and such irreparable injury will continue unless Defendant is enjoined by this Court.

89.     Edge is informed and believes that Defendant's unfair competition has been willful, wanton, and oppressive, entitling Edge to punitive damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs pray for judgment in their favor against Defendant for the following relief:

A.     An Order adjudging Defendant to have directly infringed, induced the infringement of, and contributorily infringed the Asserted Patents under 35 U.S.C. § 271;

B.     A preliminary and permanent injunction enjoining Defendant, its officers, directors, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendant, from (1) making, using, selling, offering to sell, and/or importing the Accused Product, and (2)

infringing the Asserted Patents in violation of 35 U.S.C. § 271, either directly or indirectly;

C.     An accounting for all of Defendant's gains, profits, and advantages derived by Defendant's infringement of the Asserted Patents in violation of 35 U.S.C. § 271, and an Order that Defendant pay to Plaintiffs actual damages in the form of lost profits, or in the alternative, other damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the patented inventions by Defendant, in accordance with 35 U.S.C. § 284;

D.     An Order for a trebling of damages and/or exemplary damages because of Defendant's willful conduct pursuant to 35 U.S.C. § 284;

E.     An Order adjudging that this case is exceptional under 35 U.S.C. § 285 and ordering Defendant to pay to Plaintiffs their reasonable attorney fees incurred in this action;

F.     An Order adjudging Defendant to have infringed the Edge Trade Dress and to have competed unfairly with Edge;

G.     A preliminary and permanent injunction enjoining Defendant, its officers, directors, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendant, from using the Edge Trade Dress or any trade dress that is confusingly similar thereto;

H.     An accounting to determine Defendant's profits resulting from its trade dress infringement and unfair competition, and an award monetary relief to Edge in an amount to be fixed by the Court in its discretion as it finds just, including:

    1.  all profits received by Defendant from sales and revenues of any kind made as a result of its infringing actions; and

    2.  all damages sustained by Edge as a result of Defendant's acts of trade dress infringement and unfair competition.

1    I.    An Order that such profits and damages be trebled and awarded to

2  Edge pursuant to 15 U.S.C. § 1117;

3    J.    An Order adjudging this to be an exceptional case under 15 U.S.C.

4  § 1117 and ordering Defendant to pay to Edge its reasonable attorney fees

5  incurred in this action;

6    K.    An Order awarding Edge punitive damages under California law;

7    L.    An Order awarding pre-judgment and post-judgement interest and

8  costs as fixed by the Court; and

9    M.    Such other and further relief as this Court may deem just and

10 proper.

11                          Respectfully submitted,

12                          KNOBBE, MARTENS, OLSON & BEAR, LLP

13

14 Dated: June 22, 2017          By: */s/ Ali S. Razai*
15                               Brenton R. Babcock
                                 brent.babcock@knobbe.com
16                               Ali S. Razai
                                 ali.razai@knobbe.com
17
                                 Attorneys for Plaintiffs
18                               EDGE SYSTEMS LLC and
                                 AXIA MEDSCIENCES, LLC

19

20

21

22

23

24

25

26

27

28

- 19 -

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.


Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: June 22, 2017        By: */s/Ali S. Razai*
                                 Brenton R. Babcock
                                 brent.babcock@knobbe.com
                                 Ali S. Razai
                                 ali.razai@knobbe.com


                                 Attorneys for Plaintiffs
                                 EDGE SYSTEMS LLC and
                                 AXIA MEDSCIENCES, LLC

25676819